UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MYEKEAL D. WYNN- | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| THE CITY OF INDIANAPOLIS, | ) | |
| | ) | |
| MICHAEL EDWIN MCCALLIP, | ) | |
| MATTHEW HARRIS, | ) | |
| *in their individual and official* | ) | |
| *capacities* | ) | |
| | ) | |
| WILLIAM E. WIRE, *in his individual* | ) | |
| *and official capacity* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RYAN MEARS and CHRISTOPHER | ) | |
| BAILEY, | ) | |
| *in their official capacities* | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

Comes now Plaintiff, Myekeal D. Wynn, and states his claims against Defendants The City of Indianapolis ("Indianapolis"), Michael Edwin McCalip ("McCalip"), Matthew Harris ("Harris"), William E. Wire ("Wire"), Ryan Mears ("Mears"), and Christopher Bailey ("Bailey") for redress for deprivation of the rights secured to Plaintiff by the Constitution and laws of the United States, and in support of the same shows as follows:

## JURISDICTION AND VENUE

1.      This action arises under 42 U.S. Code § 1983, U.S. Constitutional Amendments 1, 4, 5, 9, and 14 and other Federal statutes, laws, regulations, judicial decisions, U.S. Constitutional provisions, and the laws and Constitutions of the State of Indiana.

2.      This action involves a substantial question of Federal Law.

3.      The amount in controversy, exclusive of interests and costs, exceeds $75,000.

4.      Venue is appropriate in the district pursuant to 28 U.S.C. §1391(b), because during the relevant time, Defendants were residing in or had agents or transacted their illegal conduct in the Southern District of Indiana. Venue is also appropriate in this district because this is the judicial district in which the claims arose.

## PARTIES

5.      At all times relevant hereto, Plaintiff Myekeal Wynn was and is an individual adult citizen of the United States residing in Indianapolis, Indiana.

6.      Upon information and belief, Defendant City of Indianapolis ("Indianapolis") is the municipal entity and has direct supervisory oversight and control over the Indianapolis Metropolitan Police Department ("herein IMPD") including Defendants Michael Edwin McCalip and Matthew Harris.

7.      Defendant City of Indianapolis has a principal place of business located at 200 East Washington Street, Suite 1601, Indianapolis, Indiana 46204.

8.      At all times relevant hereto, Indianapolis employed Defendants Michael Edwin McCalip, Matthew Harris, and William Wire.

9.      Pursuant to Seventh Circuit precedent, Indianapolis is the proper party to be sued when complaints arise against the IMPD.

10.     Indianapolis Metropolitan Police Department has a principal place of business located at 50 N. Alabama Street, Indianapolis, Indiana 46204.

11.     At all times relevant hereto, Indianapolis and IMPD employed Michael Edwin McCalip and Mathhew Harris and were responsible for their hiring oversight and training.

12.     At all times relevant hereto, Christopher Bailey, Chief of IMPD, exerted oversight over officers of the IMPD.

13.     At all times relevant hereto, Christopher Bailey, established the customs and practices of IMPD.

14.     At all times relevant hereto, Christopher Bailey set the policy and institutional goals of IMPD.

15.     At all times relevant hereto, Christopher bailey was responsible for the oversight, training, and actions of Matthew Harris and Michael Edwin McCalip.

16.     At all times relevant hereto, Ryan Mears exerted oversight of individuals working within the Marion County Prosecutor's office.

17.     Ryan Mears is responsible for the oversight and training of deputy prosecutors including William E. Wire.

18.     Ryan Mears establishes the policy and customs of the Marion County Prosecutors Office.

19.     At all times relevant hereto, William E. Wire was an employee of the City of Indianapolis and the Marion County Prosecutor's office.

## FACTUAL ALLEGATIONS

20.     On or about December 16, 2023, at around 9:30 p.m., Plaintiff arrived at Coaches Tavern located at 28 Pennsylvania St., Indianapolis Indiana for a colleague's birthday celebration.

21.     Plaintiff mistook O'Riley's Irish Pub for Coaches Tavern and sent his wife inside to get a table and order drinks while he smoked a cigarette on the patio of what he would later find out to be O'Riley's Irish Pub.

22.     While situated on the patio, Plaintiff observed who would later become known to Plaintiff as IMPD officer Matthew Harris ("Harris") conducting an illegal search of a suspect's belongings.

23.     In passing, Plaintiff commented that Harris probably should not be searching his belongings without a warrant and that Plaintiff would be recording the interaction.

24.     Thereafter, Plaintiff began recording.

25.     Harris was visibly incensed by Plaintiff's comment and act of recording and ordered Plaintiff to move away twenty-five feet.

26.     Plaintiff questioned Harris's order as twenty-five feet would have put Plaintiff out of the Patio that Plaintiff was lawfully occupying as a invitee of O'Riley's Pub and into the rain, and because Plaintiff was acting within the scope of First Amendment protected activities.

27.     The patio of O'Riley's Pub was packed with individuals, some closer, and some further than where Plaintiff was to Harris.

28.     Harris did not ask any other invitee of O'Riley's to move.

29.     Harris's only objective in asking Plaintiff to move was to frustrate the exercise of legitimate First Amendment protected activities.

30.     Plaintiff asked Harris why he was asked to move, and others were not.

31.     Harris responded to Plaintiff by stating that Plaintiff was a problem and interfering.

32.     Plaintiff asked Harris if recording the interaction was interfering.

33.     Harris then stated that recording was not interfering.

34.     After Harris's admission that recording was not interfering, Harris's partner Michael McCalip ("McCalip") then interjected with a loud tone in an effort to intimidate Plaintiff.

35.     Because of Plaintiff's exercise of First Amendment protected activities, Harris decided to place Plaintiff under arrest for unlawful encroachment despite the fact that he had no probable cause to do so.

36.     Indiana's unlawful encroachment statute, Indiana Code § 35-44.1-2-14, purportedly criminalizes "A person who knowingly or intentionally approaches within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties *after the law enforcement officer has ordered the person to stop approaching.*" IC § 35-44.1-2-14 (emphasis added).

37.     Plaintiff did not continue to approach Harris nor McCalip after being ordered to do so but rather, Harris and McCalip began to approach Plaintiff.

38.     Plaintiff objected to and protested his arrest based on the fact that he was legitimately exercising First Amendment protected activity.

39.     Based on his objections, Harris wrapped his arms around Plaintiff's neck and violently threw Plaintiff to the ground.

40.     While Harris was wrapping Plaintiff around the neck, McCalip seized Plaintiff by the arm.

41.     When Harris threw Plaintiff to the ground, all three parties –McCalip, Harris, and Plaintiff fell to the ground.

42.     In the ensuing confusion and while all parties were on the ground, Harris continued to pull Plaintiff by the neck while McCalip, continued pull Plaintiff's arm in the opposite direction.

43.    Plaintiff's breathing was restricted and Plaintiff's arm was pulled out of socket due to the countervailing force applied by McCalip and Harris.

44.    Plaintiff was given instructions to turn over, to which Plaintiff complied.

45.    When Plaintiff was turned over and prone, McCalip placed his knee into the back of plaintiff between his ribs and pressed down hard in an effort to cause Plaintiff pain.

46.    McCalip grew frustrated that Plaintiff did not cry out in pain so McCalip wrenched Plaintiff's already out of socket arm into an unnatural position that caused Plaintiff to cry out in pain.

47.    Bystanders objected to the use of force McCalip used against a prone and defenseless subject who was already in handcuffs.

48.    Both officers were unaware of the existence of bystander footage that would contradict the claims made in the Probable Cause Affidavit that Harris would eventually draft.

49.    After the chaos unfolded, Harris drafted a Probable Cause Affidavit under which he declared under the penalties of perjury that he personally witnessed Plaintiff strike McCalip with a closed fist in the face and "bounce" McCalip's head off of the concrete.

50.    Harris was under the impression that due to the fracas, the Body Worn Camera footage would be ambiguous enough for him to make material misstatements of fact.

51.    However, the bystander camera footage clearly demonstrated that there was not a punch thrown, Plaintiff did not slam McCalip's head, and that it was Harris's conscious intent to slam Plaintiff to the ground.

52.    After being confronted with the bystander footage and at a deposition in the criminal matter, Harris admitted that he did not see a punch thrown, but assumed a punch was thrown because of a bruise on McCalip's face.

53.     At the same deposition, McCalip admitted that he did not see a punch get thrown on December 16, 2023.

54.     It was not until after McCalip reviewed Harris's probable cause affidavit that McCalip averred that a punch was thrown.

55.     Harris's conscious intent in drafting the probable cause affidavit was to charge Plaintiff with a felony, irrespective of what the facts were.

56.     Harris consciously disregarded the truth and supplied false and misleading information in a probable cause affidavit with the sole intent of making sure a felony was charged.

57.     Harris knew that the statements contained in the probable cause affidavit were false and misleading.

58.     Harris never acknowledge that the statements contained in the probable cause affidavit were false and misleading until he was confronted with incontrovertible evidence that those statements were false and misleading.

59.     Harris's accusations shifted from Plaintiff aggressively assaulted McCalip to if Plaintiff did not resist arrest, the events that transpired would not have happened only after being confronted with incontrovertible evidence that the statements made in the probable cause affidavit were materially false and misleading.

60.     Based upon the false and misleading factual averments contained in Harris's probable cause affidavit, Plaintiff was charged by the Marion County Prosecutor's Office ("MCPO") for Battery on a Public Safety Official as a Level 5 felony, Resisting Arrest as a class A misdemeanor, and Unlawful Encroachment as a class C misdemeanor.

61.     During the pretrial phase of the criminal proceedings, the MCPO, through then deputy prosecutor Lucas Heffner, was presented with the bystander footage. Heffner

acknowledged that based on the bystander footage, it was unlikely that the Prosecution could secure a conviction for Battery on a Public Safety Official as a Level 5 felony and moved to amend the Information to Resisting Causing Injury as a Level 6 felony.

62.    William Wire ("Wire") became the deputy prosecutor in this case on or about September of 2024.

63.    On or about September 28, 2024, this Honorable Court issued its injunction in *Reps. Comm. for Freedom of the Press v. Rokita*, *inter alia*, clearly enjoining the Marion County Prosecutor's Office from enforcing the Unlawful Encroachment statute.

64.    That injunction was upheld by the Seventh Circuit on or about August 6, 2025.

65.    The MCPO and Wire had specific knowledge that the injunction was issued by the Southern District of Indiana.

66.    At his deposition, McCalip stated that his understanding on December 16, 2023 that he was trained by the City of Indianapolis that he could make an arrest based on the Unlawful Encroachment statute if someone was within ten feet of him speaking and recording, but not if they were just recording.

67.    The MCPO and Wire knew or should have known that due to the issuance of the injunction in *Reps. Comm. for Freedom of the Press v. Rokita*, the MCPO was specifically enjoined from enforcing the Unlawful Encroachment statute.

68.    Irrespective of the injunction that the MCPO and Wire knew about, Wire continued to prosecute Plaintiff under IC § 35-44.1-2-14.

69.    Wire's conscious objective was to insulate the Officers from suit.

70.    Wire provided legal advice to the officers and crafted a plea agreement that would ostensibly protect the Officers from suit.

71.    Wire acted as legal representative for the Officers and not in his prosecutorial capacity.

72.    Wire's actions were not prosecutorial functions but rather administrative and investigative.

73.    Wire ultimately enticed Plaintiff into a plea deal where Plaintiff was enticed to plead guilty to IC § 35-44.1-2-14.

74.    Wire acted as an attorney for McCalip and Harris, and not in the interests of justice nor in his capacity as a deputy prosecutor.

75.    Wire insisted on a plea to Unlawful Encroachment because he believed that a plea to Unlawful Encroachment would protect officers McCalip and Harris from civil suit.

76.    Wire insisted on a plea to Unlawful Encroachment despite the fact that he knew that he and the MPCO were and are explicitly enjoined from seeking a conviction under the Unlawful Encroachment statute.

77.    During the pendency of the criminal matter, Wire began to perform actions outside of the scope of his prosecutorial function on behalf of himself and McCalip and Harris.

78.    These actions include, but are not limited to incessantly following Plaintiff, his wife, and infant child around French Lick, Indiana during June 19-21, 2025; commenting to Plaintiff's colleagues about Plaintiff; and waiting for Plaintiff and his wife to separate so that Wire could ride the bus with Plaintiff's wife.

79.    Wire's actions at all times were motivated solely by personal animus and were separate and distinct from his prosecutorial role however, Wire used his prosecutorial role to give bite to his personal animus.

## CAUSES OF ACTION

I.    _Count I: Section 1983 –Violation of Fourth Amendment_ (*Defendants City of Indianapolis, Bailey, McCalip, and Harris*)

80.    Plaintiff incorporates paragraphs 1-75 as if fully restated herein.

81.    Plaintiff had the right to be secure in person and possessions from unwarranted search and seizures pursuant to the Fourth Amendment of the United States Constitution.

82.    Harris and McCalip used unnecessary and excessive force.

83.    Prosecution as to Battery on a Peace Officer and Encroachment were initiated without probable cause.

84.    Prosecution as to Battery on a Peace Officer was terminated in favor of Plaintiff.

85.    Prosecution as to Encroachment was illegal *ab initio* and continues to be illegal pursuant to Southern District of Indiana and Seventh Circuit Precedent.

86.    Harris and McCalip's actions deprived Plaintiff of the right to be secure in his person from unlawful and unwarranted seizure.

87.    Both Harris and McCalip failed to intervene in the unlawful acts of each other.

88.    Under color of state law Haris and McCalip deprived plaintiff of his constitutional right to be free of unlawful and unwarranted seizures.

89.    In doing so, Harris and McCalip violated clearly established legal principles and did so with conscious and/or reckless disregard for Plaintiff's Constitutional rights.

90.    At the time of the deprivation, Harris and McCalip were operating under the color of state law.

91.    A reasonable officer would have known that the seizure was violative of the Fourth Amendment.

92.    The right violated by Harris and McCalip was clearly established at the time of the arrest.

93.    The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for training Harris and McCalip on Fourth Amendment principles.

94.    The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for establishing the pattern, customs, and policies that caused the deprivation of Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants.

II.    _Count II: Section 1983 –Violation of First Amendment (Defendants City of Indianapolis, Bailey, McCalip, and Harris.)_

95.    By operation of Federal case law and the U.S. constitution, Plaintiff had the right to peacefully record police interactions and provide commentary on what he thought about that interaction.

96.    Harris and McCalip's actions deprived Plaintiff of the rights secured to Plaintiff under the First Amendment.

97.    Under color of state law Haris and McCalip deprived plaintiff of his constitutional rights under the First Amendment.

98.    In doing so, Harris and McCalip violated clearly established legal principles and did so with conscious and/or reckless disregard for Plaintiff's Constitutional rights.

99.    At the time of the deprivation, Harris and McCalip were operating under the color of state law.

100.    A reasonable officer would have known that the seizure was violative of the First Amendment.

101.    The right violated by Harris and McCalip was clearly established at the time of the arrest.

102.    The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for training Harris and McCalip on First Amendment principles.

103.    The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for establishing the pattern, customs, and policies that caused the deprivation of Plaintiff's rights.

104.    This Court has the authority to issue judgment as to the violation of the First Amendment and Fourteenth Amendment as to the Encroachment statute because it was this Courts's Order that enjoined the enforcement of the Encroachment statute.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants.

III.    _Count III: Section 1983 –Violation of Fifth and Fourteenth Amendment (Defendants City of Indianapolis, Bailey, McCalip and Harris)._

105.    The Fifth Amendment is applied to the States by the Fourteenth Amendment.

106.    At all times relevant hereto, Plaintiff was constitutionally guaranteed due process of law.

107.    Harris and McCalip used unnecessary and excessive force.

108.    Harris knowingly made material misstatements of fact in his probable cause affidavit that caused criminal proceedings to be instituted against Plaintiff.

109.    Per Seventh Circuit precedent, an officer making knowing and intentional misstatements of fact and law is violative of the Due Process clause and the Fourth Amendment.

110. By making knowing misstatements of fact to in his probable cause affidavit, Harris placed his thumb on the scale of justice, violating Plaintiff's right to due process.

111. By co-signing Harris's knowing misstatement of fact, McCalip is also complicit in violating Plaintiff's due process rights.

112. By making misstatements of fact, Harris fabricated evidence.

113. Harris and McCalip were acting under color of state law when they violated Plaintiff's right to due process.

114. In violating Plaintiff's due process rights, Harris and McCalip violated clearly established legal principles and did so with conscious and/or reckless disregard for Plaintiff's Constitutional rights.

115. A reasonable officer would have known that making material misstatement of facts would violate a Plaintiff's due process rights.

116. The right violated by Harris and McCalip was clearly established at the time Harris and McCalip violated Plaintiff's due process rights.

117. The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for training Harris and McCalip on Due Process principles.

118. The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for establishing the pattern, customs, and policies that caused the deprivation of Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants.

IV.  _Count IV: Section 1983 –Violation of Fifth and Fourteenth Amendment (Defendants Evan Wire and Ryan Mears)._

119.    The Fifth Amendment is applied to the States by the Fourteenth Amendment.

120.    At all times relevant hereto, Plaintiff was constitutionally guaranteed due process of law.

121.    Mears and Wire were aware that they were enjoined from seeking a conviction under the Unlawful Encroachment statute by this Honorable Court.

122.    Mears and Wire still proceeded to seek a conviction under the Unlawful Encroachment statute with specific knowledge of the injunction.

123.    Wire did so not in the interests of justice, but as representatives of Harris and McCalip.

124.    Wire did not act in his prosecutorial capacity doing prosecutorial functions.

125.    Wire's actions were, at best administrative and investigatory.

126.    Wire provided legal advice to the Officers.

127.    Wire acted as attorney for the Officers and not as an advocate for the State.

128.    Wire knew or should have known that seeking a conviction of under the Unlawful encroachment statute would violate Plaintiff's due process rights.

129.    A reasonable prosecutor would not have sought a conviction under a statute declared unconstitutional and enjoined.

130.    A reasonable attorney would not have sought a conviction under a statute declared unconstitutional and enjoined.

131.    Wire acted under color of state law.

132.    Wire did not act in his prosecutorial capacity.

133.    Wire's actions were motivated solely by animus.

134.    Wire's actions as representative of Harris and McCalip abrogates his prosecutorial immunity because he was not acting in his prosecutorial function.

135.    Wire's actions violated clearly established legal principles and he did so with conscious and/or reckless disregard for Plaintiff's Constitutional rights.

136.    Ryan Mears was responsible for training and oversight of Wire.

137.    Mears failed to adequately train and oversee Wire.

138.    Mears were responsible for establishing the pattern, customs, and policies that caused the deprivation of Plaintiff's rights.

139.    This suit does not seek to challenge or otherwise collaterally attack Plaintiff's conviction for resisting law enforcement as a level 6 felony as Plaintiff recognized that he resisted.

140.    The facts giving rise to the resisting conviction are factually distinct from Plaintiff's factual averments as to the his constitutional injuries

141.    Plaintiff's constitutional rights could have been violated independently of the act of resisting arrest.

142.    This Court has the authority to issue judgment as to the violation of the First Amendment and Fourteenth Amendment as to the Encroachment statute because it was this Courts's Order that enjoined the enforcement of the Encroachment statute.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants.

V.    _Count V: Section 1983 – Monell Liability (Defendants Christopher Bailey, The City of Indianapolis and Ryan Mears)._

143.    Mears, Bailey and Indianapolis were responsible for supervising and training McCalip, Harris, and Wire.

144.    Mears, Bailey, and Indianapolis have a policy or custom of tolerating misconduct.

145.    Mears, Bailey, and Indianapolis were deliberately indifferent to constitutional violations in this case and others.

146.    Mears, Bailey, and Indianapolis's failures were a direct causal connection to the harms inflicted on Plaintiff.

WHEREFORE, Plaintiff, by counsel respectfully requests that judgment be entered in his favor, and against Defendants in an amount to be determined after discovery, for costs of prosecuting this action, for attorney's fees, and for punitive damages to the extent such damages are available. Plaintiff further requests that this Court grants habeas relief as to the Encroachment Statute, and for all relief just and proper on the premises.

Respectfully Submitted,

Myekeal D. Wynn

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 38-1 of the United States District Court for the Southern District of Indiana, Plaintiff Myekeal D. Wynn hereby demands a trial by jury on all issues so triable in this action.


Respectfully submitted,

*/s/Myekeal D. Wynn*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2025 a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF and will be served on all named parties.


_/s/ Myekeal D. Wynn_
Myekeal Wynn (36409-53)