UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MYEKEAL D. WYNN- | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-01608-TWP-TAB |
| | ) | |
| THE CITY OF INDIANAPOLIS, | ) | |
| | ) | |
| MICHAEL EDWIN MCCALLIP, | ) | |
| MATTHEW HARRIS, | ) | |
| *in their individual and official* | ) | |
| *capacities* | ) | |
| | ) | |
| JOSEPH FEENY, *in his individual and* | ) | |
| *official capacity* | ) | |
| | ) | |
| JOHN DOE 1-3, *in their individual and* | ) | |
| *official capacities* | ) | |
| | ) | |
| WILLIAM E. WIRE, *in his individual* | ) | |
| *and official capacity* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RYAN MEARS and CHRISTOPHER | ) | |
| BAILEY, | ) | |
| *in their official capacities* | ) | |
| Defendants. | ) | |

**FILED**

**03/06/2026**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

## SECOND AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

Comes now Plaintiff, Myekeal D. Wynn, and states his claims against Defendants The City of Indianapolis, Michael Edwin McCalip, Matthew Harris, William E. Wire, Ryan Mears, and Christopher Bailey for redress for deprivation of the rights secured to Plaintiff by the Constitution and laws of the United States, and in support of the same shows as follows:

## JURISDICTION AND VENUE

1

1.      This action arises under 42 U.S. Code § 1983, U.S. Constitutional Amendments I, IV, V, IX, and XIV and other Federal statutes, laws, regulations, judicial decisions, U.S. Constitutional provisions, and the laws and Constitutions of the State of Indiana.

2.      This action involves a substantial question of Federal Law.

3.      The amount in controversy, exclusive of interest and costs, exceeds $75,000.

4.      Venue is appropriate in the district pursuant to 28 U.S.C. §1391(b), because during the relevant time, Defendants were residing in or had agents or transacted their illegal conduct in the Southern District of Indiana. Venue is also appropriate in this district because this is the judicial district in which the claims arose.

## **PARTIES**

5.      At all times relevant hereto, Plaintiff Myekeal Wynn was and is an individual adult citizen of the United States residing in Indianapolis, Indiana.

6.      Upon information and belief, Defendant City of Indianapolis ("Indianapolis") is the municipal entity that has direct supervisory oversight and control over the Indianapolis Metropolitan Police Department ("IMPD") including Defendants Michael Edwin McCalip and Matthew Harris.

7.      Defendant City of Indianapolis has a principal place of business located at 200 East Washington Street, Suite 1601, Indianapolis, Indiana 46204.

8.      At all times relevant hereto, Indianapolis employed Defendants Michael Edwin McCalip, Christopher Bailey, and Matthew Harris.

9.      Pursuant to Seventh Circuit precedent, Indianapolis is the proper party to be sued when complaints arise against the IMPD.

10. Indianapolis Metropolitan Police Department has a principal place of business located at 50 N. Alabama Street, Indianapolis, Indiana 46204.

11. At all times relevant hereto, Indianapolis and IMPD employed Michael Edwin McCalip and Matthew Harris and were responsible for their hiring, oversight, and training.

12. At all times relevant hereto, Christopher Bailey, Chief of IMPD, exerted oversight over officers of the IMPD including McCalip and Harris.

13. At all times relevant hereto, Christopher Bailey, established the customs and practices of IMPD.

14. At all times relevant hereto, Christopher Bailey set the policy and institutional goals of IMPD.

15. At all times relevant hereto, Christopher Bailey was responsible for the oversight, training, and actions of Matthew Harris and Michael Edwin McCalip.

16. At all times relevant hereto, Ryan Mears exerted oversight of individuals working within the Marion County Prosecutor's office.

17. Ryan Mears is responsible for the oversight and training of deputy prosecutors including William E. Wire.

18. Ryan Mears establishes the policy and customs of the Marion County Prosecutor's Office.

19. At all times relevant hereto, William E. Wire was an employee of and Marion County Prosecutor's Office.

20. At all times relevant hereto, Joseph Feeny, was an employee of the Marion County Prosecutor's Office.

21.     Upon information and belief, at all times relevant hereto, John Does 1-3 were employees of the Marion County Prosecutor's Office.

### FACTUAL ALLEGATIONS

22.     On or about December 16, 2023, at around 9:30 p.m., Plaintiff arrived at Coaches Tavern located at 28 Pennsylvania St., Indianapolis Indiana for a colleague's birthday celebration.

23.     Plaintiff mistook O'Riley's Irish Pub for Coaches Tavern and sent his wife inside to get a table and order drinks while he smoked a cigarette on the patio of what he would later find out to be O'Riley's Irish Pub.

24.     While situated on the Patio, Plaintiff observed who would later become known to Plaintiff as IMPD officer Matthew Harris ("Harris") conducting an illegal search of a suspect's belongings.

25.     In passing, Plaintiff commented that Harris probably should not be searching his belongings without a warrant and that Plaintiff would be recording the interaction.

26.     Thereafter, Plaintiff began recording.

27.     Harris was visibly incensed by Plaintiff's comment and act of recording and ordered Plaintiff to move away twenty-five feet.

28.     Plaintiff questioned Harris's order as twenty-five feet would have put Plaintiff out of the Patio that Plaintiff was lawfully occupying as an invitee of O'Riley's Pub and into the rain, and because Plaintiff was acting within the scope of First Amendment protected activities.

29.     The patio of O'Riley's Pub was packed with individuals, some closer, and some further than where Plaintiff was to Harris.

30.     Harris did not ask any other invitee of O'Riley's to move.

4

31. Harris's only objective in asking Plaintiff to move was to frustrate the exercise of legitimate First Amendment protected activities.

32. Plaintiff asked Harris why he was asked to move, and others were not.

33. Harris responded to Plaintiff by stating that Plaintiff was a problem and interfering.

34. Plaintiff asked Harris if recording the interaction was interfering.

35. Harris then stated that recording was not interfering.

36. After Harris's admission that recording was not interfering, Harris's partner Michael McCalip ("McCalip") then interjected with a loud tone in an effort to intimidate Plaintiff.

37. Because of Plaintiff's exercise of First Amendment protected activities, Harris decided to place Plaintiff under arrest for unlawful encroachment despite the fact that he had no probable cause to do so.

38. Indiana's unlawful encroachment statute, Indiana Code § 35-44.1-2-14, purportedly criminalizes "A person who knowingly or intentionally approaches within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties *after the law enforcement officer has ordered the person to stop approaching.*" IC § 35-44.1-2-14 (emphasis added).

39. Plaintiff did not continue to approach Harris nor McCalip after being ordered to do so but rather, Harris and McCalip began to approach Plaintiff.

40. Plaintiff objected to and protested his arrest based on the fact that he was legitimately exercising First Amendment protected activity.

41. Based on his objections, Harris wrapped his arms around Plaintiff's neck and violently threw Plaintiff to the ground.

42. While Harris was wrapping Plaintiff around the neck, McCalip seized Plaintiff by the arm.

43. When Harris threw Plaintiff to the ground, all three parties –McCalip, Harris, and Plaintiff fell to the ground.

44. In the ensuing confusion and while all parties were on the ground, Harris continued to pull Plaintiff by the neck while McCalip continued to pull Plaintiff's arm in the opposite direction.

45. Plaintiff's breathing was restricted, and Plaintiff's arm was pulled out of socket due to the countervailing force applied by McCalip and Harris.

46. Plaintiff was given instructions to turn over, to which Plaintiff complied.

47. When Plaintiff was turned over and prone, McCalip placed his knee into the back of Plaintiff between his ribs and pressed down hard in an effort to cause Plaintiff pain.

48. McCalip grew frustrated that Plaintiff did not cry out in pain so McCalip wrenched Plaintiff's already out of socket arm into an unnatural position that caused Plaintiff to cry out in pain.

49. Bystanders objected to the use of force McCalip used against a prone and defenseless subject who was already in handcuffs.

50. Both officers were unaware of the existence of bystander footage that would contradict the claims made in the Probable Cause Affidavit that Harris would eventually draft.

51. After the chaos unfolded, Harris drafted a Probable Cause Affidavit in which he declared under the penalties of perjury that he personally witnessed Plaintiff strike McCalip with a closed fist in the face and "bounce" McCalip's head off of the concrete.

52. Harris was under the impression that due to the fracas, the Body Worn Camera footage would be ambiguous enough for him to make material misstatements of fact.

53. However, the bystander camera footage and witness statements clearly demonstrated that there was not a punch thrown, Plaintiff did not slam McCalip's head, and that it was Harris's conscious intent to slam Plaintiff to the ground.

54. Harris later admitted at a deposition that his conscious intent was to slam Plaintiff to the ground.

55. After being confronted with the bystander footage and at a deposition in the criminal matter, Harris admitted that he did not see a punch thrown, but assumed a punch was thrown because of a bruise on McCalip's face caused by the fall.

56. At the same deposition, McCalip admitted that he did not see a punch get thrown on December 16, 2023.

57. It was not until after McCalip reviewed Harris's Probable Cause Affidavit that McCalip averred that a punch was thrown.

58. Harris's conscious intent in drafting the Probable Cause Affidavit was to have Plaintiff charged with a felony, irrespective of what the facts were.

59. Harris consciously disregarded the truth and supplied false and misleading information in a Probable Cause Affidavit with the sole intent of making sure a felony was charged.

60. Harris knew that the statements contained in the Probable Cause Affidavit were false and misleading.

61. Harris acknowledged that the statements contained in the Probable Cause Affidavit were false and misleading after he was confronted with incontrovertible evidence that those statements were false and misleading at his deposition.

7

62. Over the course of the case, Harris's accusations shifted from that Plaintiff aggressively assaulted McCalip to if Plaintiff did not resist arrest, the events that transpired would not have happened, only after being confronted with incontrovertible evidence that the statements made in the Probable Cause Affidavit were materially false and misleading.

63. Based upon the false and misleading factual averments contained in Harris's Probable Cause Affidavit, Plaintiff was charged by the Marion County Prosecutor's Office ("MCPO") for Battery on a Public Safety Official as a Level 5 Felony, Resisting Arrest as a Class A misdemeanor, and Unlawful Encroachment as a Class C misdemeanor.

64. During the pretrial phase of the criminal proceedings, the MCPO, through then deputy prosecutor Lucas Heffner, was presented with the bystander footage. Heffner acknowledged that based on the bystander footage, it was unlikely that the Prosecution could secure a conviction for Battery on a Public Safety Official as a Level 5 felony and moved to amend the Information to Resisting Causing Injury as a Level 6 felony.

65. William Wire ("Wire") became the deputy prosecutor in this case on or about September of 2024.

66. On or about September 28, 2024, this Honorable Court issued its injunction in *Reps. Comm. for Freedom of the Press v. Rokita*, *inter alia*, clearly enjoining the Marion County Prosecutor's Office from enforcing the Unlawful Encroachment statute.

67. That injunction was upheld by the Seventh Circuit on or about August 6, 2025.

68. The MCPO and Wire had specific knowledge that the injunction was issued by the Southern District of Indiana.

69. The MCPO and Wire knew that they were specifically enjoined from enforcing the Unlawful Encroachment statute.

70. Upon information and belief, the MCPO sent an office wide alert to the MCPO and IMPD apprising individuals within the organization of the injunction issued as to the Unlawful Encroachment statute.

71. At his deposition, McCalip stated that his understanding on December 16, 2023, that he was trained by the City of Indianapolis that he could make an arrest based on the Unlawful Encroachment statute if someone was within ten feet of him speaking and recording, but not if they were just recording.

72. The MCPO and Wire knew or should have known that due to the issuance of the injunction in *Reps. Comm. for Freedom of the Press v. Rokita*, the MCPO was specifically enjoined from enforcing the Unlawful Encroachment statute.

73. Irrespective of the injunction that the MCPO and Wire knew about, Wire continued to prosecute Plaintiff under IC § 35-44.1-2-14.

74. Plaintiff desired to take accountability for resisting arrest, however Wire would not extend a plea offer without including the charge for Unlawful Encroachment.

75. By his refusal to offer a plea that did not include the Unlawful Encroachment charge, Wire acted as attorney for Harris and McCallip in that his intent was to insulate Harris and McCallip from suit, not to effectuate justice.

76. The plea offer was a contract of adhesion whereby the only way Plaintiff could take accountability would be to accept a conviction for a constitutionally dubious statute that Wire knew he was enjoined from seeking a conviction under.

77. Wire acted as an attorney for McCalip and Harris, and not in the interests of justice nor in his capacity as a deputy prosecutor.

78. McCalip told Wire that McCalip signed a form stating that he was not injured at the scene. Wire failed to disclose that exculpatory evidence to Plaintiff's defense team.

79. During the pendency of the criminal matter, Wire began to perform actions outside of the scope of his prosecutorial function on behalf of himself and McCalip and Harris.

80. These actions include, but are not limited to incessantly following Plaintiff, his wife, and infant child around French Lick, Indiana during June 19-21, 2025; commenting to Plaintiff's colleagues about Plaintiff; and waiting for Plaintiff and his wife to separate so that Wire could ride the bus with Plaintiff's wife.

81. These actions and much of Wire's actions had no connection to an advocacy role.

82. Wire's actions at all times were motivated solely by personal animus and were separate and distinct from his prosecutorial role however, Wire used his prosecutorial role to give bite to his personal animus.

83. On August 14, 2025, Plaintiff perfected service of the Summons and Complaint in the above captioned matter on the City of Indianapolis.

84. On August 18, 2025, Plaintiff perfected service of the Summons and Complaint in the above captioned matter on Ryan Mears and William Evan Wire.

85. Shortly after Plaintiff received notice that service was perfected on Ryan Mears and Evan Wire, Plaintiff was informed that someone had reached out to Plaintiff's employer in an effort to get him fired.

86. Upon information and belief, the complaint received by Plaintiff's employer specifically mentioned Plaintiff's Original Complaint.

87. The timing of the service of process and someone contacting Plaintiff's employer indicates that either someone within the Marion County Prosecutors Office or City of Indianapolis contacted Plaintiff's employer.

88. The timing of the service of process indicates that Plaintiff's employer was contacted as a direct result of Plaintiff's Complaint in this matter.

89. Plaintiff has a constitutionally protected right to avail himself of the Courts if he believes he has been aggrieved.

90. Contacting Plaintiff's employer was retaliation for Plaintiff's act of filing this instant lawsuit.

91. Contacting Plaintiff's employer was retaliation for Plaintiff's constitutionally protected act of petitioning the courts.

92. Upon information and belief, the party who contacted Plaintiff's employer was acting under the color of state law.

93. Upon information and belief William E. Wire filed contacted Plaintiff's employer.

94. On September 3, 2025, Plaintiff became aware that William E. Wire filed a disciplinary complaint against him.

95. The Complaint was filed in retaliation for Plaintiff's actions of filing suit.

96. Upon information and belief Joseph Feeny encouraged, actually sent, participated, directed, or facilitated sending the complaint to Plaintiff's employer.

97. Upon information and belief, John Does 1-3, encouraged, actually sent, participated, directed, or facilitated sending the complaint to Plaintiff's employer.

98. John Does 1-3, Feeny, Wire, McCalip, and Harris all conspired to violate Plaintiff's constitutional rights.

99.     John Does 1-3, Feeny, Wire, McCalip, and Harris each failed to intervene in each other's actions that violated Plaintiff's constitutional rights.

## CAUSES OF ACTION

I.     *Count I: Section 1983 –Violation of Fourth Amendment (Defendants City of Indianapolis, Bailey, McCalip, and Harris)*

100.     Plaintiff incorporates paragraphs 1-99 as if fully restated herein.

101.     Plaintiff had the right to be secure in person and possessions from unwarranted search and seizures pursuant to the Fourth Amendment of the United States Constitution.

102.     Prosecution as to Battery on a Peace Officer and Encroachment were initiated without probable cause.

103.     Prosecution as to Battery on a Peace Officer as a Level 5 Felony was terminated in favor of Plaintiff.

104.     Prosecution as to Encroachment was illegal *ab initio* and continues to be illegal pursuant to Southern District of Indiana and Seventh Circuit Precedent.

105.     Harris and McCalip's actions deprived Plaintiff of the right to be secure in his person from unlawful and unwarranted seizure.

106.     Harris and McCalip used excessive and unnecessary force to effectuate the arrest and after Plaintiff was placed under arrest.

107.     Both Harris and McCalip failed to intervene in the unlawful acts of each other.

108.     Under color of state law Harris and McCalip deprived plaintiff of his constitutional right to be free of unlawful and unwarranted seizures.

109.     In doing so, Harris and McCalip violated clearly established legal principles and did so with conscious and/or reckless disregard for Plaintiff's Constitutional rights.

110. At the time of the deprivation, Harris and McCalip were operating under the color of state law.

111. A reasonable officer would have known that the seizure was violative of the Fourth Amendment.

112. The right violated by Harris and McCalip was clearly established at the time of the arrest.

113. The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for training Harris and McCalip on Fourth Amendment principles.

114. The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for establishing the pattern, customs, and policies that caused the deprivation of Plaintiff's rights.

II. *Count II: Section 1983 –Violation of First Amendment (Defendants City of Indianapolis, Bailey, McCalip, and Harris.)*

115. Plaintiff incorporates paragraphs 1-114 as if fully restated herein.

116. By operation of Federal case law and the U.S. constitution, Plaintiff had the right to peacefully record police interactions and provide commentary on what he thought about that interaction.

117. Harris and McCalip's actions deprived Plaintiff of the rights secured to Plaintiff under the First Amendment.

118. Under color of state law Harris and McCalip deprived plaintiff of his constitutional rights under the First Amendment.

119. In doing so, Harris and McCalip violated clearly established legal principles and did so with conscious and/or reckless disregard for Plaintiff's Constitutional rights.

120. At the time of the deprivation, Harris and McCalip were operating under the color of state law.

121. A reasonable officer would have known that the seizure was violative of the First Amendment.

122. The right violated by Harris and McCalip was clearly established at the time of the arrest.

123. The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for training Harris and McCalip on First Amendment principles.

124. The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for establishing the pattern, customs, and policies that caused the deprivation of Plaintiff's rights.

III. _Count III: Section 1983 –Violation of Fifth and Fourteenth Amendment (Defendants City of Indianapolis, Bailey, McCalip and Harris)._

125. Plaintiff incorporates paragraphs 1-124 as if fully restated herein.

126. The Fifth Amendment is applied to the States by the Fourteenth Amendment.

127. At all times relevant hereto, Plaintiff was constitutionally guaranteed due process of law.

128. Harris knowingly made material misstatements of fact in his probable cause affidavit that caused criminal proceedings to be instituted against Plaintiff.

129. Per Seventh Circuit precedent, an officer making knowing and intentional misstatements of fact and law is violative of the Due Process clause and the Fourth Amendment.

130. By making knowing misstatements of fact in his probable cause affidavit, Harris placed his thumb on the scale of justice, violating Plaintiff's right to due process.

131. By co-signing Harris's knowing misstatement of fact, McCalip is also complicit in violating Plaintiff's due process rights.

132. Harris and McCalip were acting under color of state law when they violated Plaintiff's right to due process.

133. In violating Plaintiff's due process rights, Harris and McCalip violated clearly established legal principles and did so with conscious and/or reckless disregard for Plaintiff's Constitutional rights.

134. A reasonable officer would have known that making material misstatements of fact would violate a Plaintiff's due process rights.

135. The right violated by Harris and McCalip was clearly established at the time Harris and McCalip violated Plaintiff's due process rights.

136. The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for training Harris and McCalip on Due Process principles.

137. The City of Indianapolis through IMPD and Christopher Bailey as Chief of IMPD were responsible for establishing the pattern, customs, and policies that caused the deprivation of Plaintiff's rights.

IV. _Count IV: Section 1983 –Violation of Fifth and Fourteenth Amendment (Defendants Evan Wire and Ryan Mears)._

138. Plaintiff incorporates paragraphs 1-137 as if fully restated herein.

139. The Fifth Amendment is applied to the States by the Fourteenth Amendment.

140. At all times relevant hereto, Plaintiff was constitutionally guaranteed due process of law.

141.    Wire failed to disclose to Plaintiff's defense exculpatory, or *Brady* evidence, which is McCalip's statement that he was not injured on the scene. McCalip's statement is incontrovertibly exculpatory and would have influenced Plaintiff's decision to plead guilty.

142.    Mears and Wire were aware that they were enjoined from seeking a conviction under the Unlawful Encroachment statute by this Honorable Court.

143.    Mears and Wire still proceeded to seek a conviction under the Unlawful Encroachment statute with specific knowledge of the injunction.

144.    Wire did so not in the interests of justice, but as representatives of Harris and McCalip.

145.    Wire knew or should have known that seeking a conviction of under the Unlawful Encroachment statute would violate Plaintiff's due process rights.

146.    A reasonable prosecutor would not have sought a conviction under a statute declared unconstitutional and enjoined.

147.    A reasonable attorney would not have sought a conviction under a statute declared unconstitutional and enjoined.

148.    Wire acted under color of state law.

149.    Wire did not act in his prosecutorial capacity.

150.    Wire's actions were motivated solely by animus.

151.    Wire's actions as representative of Harris and McCalip abrogates his prosecutorial immunity because he was not acting in his prosecutorial function.

152.    Wire's actions violated clearly established legal principles and he did so with conscious and/or reckless disregard for Plaintiff's Constitutional rights.

153.    Ryan Mears was responsible for training and oversight of Wire.

154. Mears failed to adequately train and oversee Wire.

155. Mears was responsible for establishing the pattern, customs, and policies that caused the deprivation of Plaintiff's rights.

V.   *Count V: Section 1983 – Monell Liability (Defendants Christopher Bailey, The City of Indianapolis and Ryan Mears).*

156. Plaintiff incorporates paragraphs 1-155 as if fully restated herein.

157. Mears, Bailey, and Indianapolis were responsible for training and oversight of Wire, Harris, and McCalip.

158. Mears, Bailey, and Indianapolis have a policy or custom of tolerating misconduct.

159. Mears, Bailey, and Indianapolis were deliberately indifferent to constitutional violations in this case and others.

160. Mears, Bailey, and Indianapolis's failures were a direct causal connection to the harms inflicted on Plaintiff.

VI.  *Count VI: Section 1983 –First Amendment Retaliation (Defendants City of Indianapolis, Ryan Mears, Joseph Feeny, John Does, and William Wire)*

161. Plaintiff incorporates paragraphs 1-160 as if fully restated herein.

162. By operation of Federal case law and the U.S. constitution, Plaintiff had the right to avail himself of the Courts.

163. Mears, Feeny, John Does, Wire, and/or the City of Indianapolis's actions or inaction constituted retaliation for Plaintiff's First Amendment protected right to access the Courts.

164. There is a causal relationship between Plaintiff's filing of a Complaint and the actions undertaken by Mears, Wire, and/or the City of Indianapolis.

165. Mears, Feeny, John Does, Wire, and/or the City of Indianapolis acted under the color of state law.

166. A person of ordinary firmness would have been deterred from accessing the Courts.

167. Mears, Feeny, John Does, Wire, and/or the City of Indianapolis's actions or inaction violated clearly established legal principles and did so with conscious and/or reckless disregard for Plaintiff's Constitutional rights.

168. A reasonable state actor would have known that their conduct was unlawful.

169. Mears and the City of Indianapolis were responsible for training and oversight over the person who contacted Plaintiff's employer and failed to adequately train them.

VII. *Count VI: Section 1983 –First Amendment Retaliation (Ryan Mears, Joseph Feeny, John Does, and William Wire)*

170. Plaintiff incorporates paragraphs 1-169 as if fully restated herein.

171. By operation of Federal case law and the U.S. constitution, Plaintiff had the right to avail himself of the Courts.

172. Mears, Feeny, John Does, and Wire's actions or inaction constituted retaliation for Plaintiff's First Amendment protected right to access the Courts.

173. There is a causal relationship between Plaintiff's filing of a Complaint and the actions undertaken by Mears, Feeny, John Does, and Wire.

174. Mears, Feeny, John Does, and Wire acted under the color of state law.

175. A person of ordinary firmness would have been deterred from accessing the Courts.

176. Mears, Feeny, John Does, and Wire's actions or inaction violated clearly established legal principles and did so with conscious and/or reckless disregard for Plaintiff's Constitutional rights.

177. A reasonable state actor would have known that their conduct was unlawful.

178. Mears was responsible for training and oversight over Wire, Feeny, and John Does.

18

VIII.    *Count VIII: Section 1983 –Failure to Intervene (Defendants City of Indianapolis, Matthew Harris, Michael McCalip, Ryan Mears, Joseph Feeny, John Does, and William Wire)*

179.    The City of Indianapolis, Matthew Harris, Michael McCalip, Ryan Mears, Joseph Feeny, John Does, and William Wire all had knowledge that Plaintiff's Constitutional Rights, as more fully outlined above, were being violated.

180.    Each of the above named parties had the opportunity to act.

181.    Each of the above named parties failed to act.

WHEREFORE, Plaintiff, by counsel respectfully requests that judgment be entered in his favor, and against Defendants in an amount to be determined after discovery, for costs of prosecuting this action, for attorney's fees, and for punitive damages to the extent such damages are available.

Respectfully Submitted,

*/s/ Myekeal D. Wynn*
Myekeal D. Wynn

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 22, 2026 a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF.

*/s/ Myekeal D. Wynn*
Myekeal Wynn (36409-53)